ANDRÉ BIROTTE JR.
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
MARK C. KRAUSE (SBN 198142)
Assistant United States Attorney
Deputy Chief, Cyber and Intellectual Property Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3493
     Facsimile: (213) 894-8601
     Email: mark.krause@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR NO. 09-1149-GAF |
| Plaintiff, | ) | |
| v. | ) | GOVERNMENT'S SENTENCING MEMORANDUM |
| BRIAN THOMAS METTENBRINK, | ) | |
| Defendant. | ) | Sentencing Date: 5/24/2010<br>Time: 1:30 p.m.<br>Honorable Gary Allen Feess |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorney Mark C. Krause, respectfully files its Sentencing Memorandum.

///

///

///

///

///

1  This filing is based on the included memorandum of points
2 and authorities, any oral argument permitted on these issues, and
3 all files and records of this case.
4 Dated: April 28, 2010

Respectfully submitted,

ANDRÉ BIROTTE JR.
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

_____
MARK C. KRAUSE
Assistant United States Attorney

Attorneys for Plaintiff
United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

On February 4, 2010, defendant Brian James Mettenbrink pleaded guilty to the sole count of the First Superseding Information charging him with unauthorized access to a protected computer and causing harm, in violation of 18 U.S.C. § 1030(a)(5)(iii), (a)(5)(B)(I), (c)(2)(A). The Probation Office has determined that defendant's total adjusted offense level is 8 and his criminal history category is I, resulting in a sentencing range of 0 to 6 months. (PSR ¶ 57).

The government agrees with the PSR's guideline calculation as well as its recommendations of one year in custody, a one year period of supervised release, and an order of restitution in the amount of $20,000. Defendant maliciously participated in a scheme to damage computers belonging to the Church of Scientology ("COS"), which caused tens of thousands of dollars in damage. Wrongful in and of itself, defendant callously targeted these computers because he did not approve of the COS. Our free society will cease to function if a malicious few are free to target individuals because of their religious beliefs. This is no less true in the information age, when technology vandals can strike at communities of interest that depend on computers to communicate, exchange ideas, and reach out to others.

II. **FACTS**

"Anonymous" is a loosely affiliated group that encourages members and followers to engage in various antisocial activities, including targeting homosexuals, members of ethnic and religious minorities, and the COS. (PSR ¶ 10). It models its methods

1

after the anti-government protest depicted in the comic book and film "V for Vendetta," in particular, its anti-hero "V." In videos featuring the group, members wear masks designed as a caricature of Guy Fawkes, just as the character in that movie wore.

On January 14, 2008, a video produced by the COS featuring an interview with Tom Cruise was leaked to the Internet and uploaded to YouTube. The COS sought removal of the video. In response, Anonymous launched a series of attacks against COS websites,[1] coordinated prank calls to COS call centers, and began other initiatives designed to disrupt the activities of the COS. (Ex. A).

Specifically, beginning on January 17, 2008, the COS' websites were targeted by directed denial of service attacks (DDOS).[2] These attacks consisted of sending bogus data requests and other communications to those websites to overwhelm the servers supporting those websites, thereby knocking the websites offline. These attacks resulted in the COS' main website, www.scientology.org, being shut down for approximately 24 hours. In response, the COS moved its servers to 800hosting, an outside

---

[1] These websites offer information about the practices of Scientology and dienetics, locations and contact information for Churches and bookstores, as well as other information.

[2] A distributed denial of service attack or "DDOS" is a type of malicious computer activity in which an attacker causes computers to "flood" a victim computer with large amounts of data or specified computer commands. If successful, a DDOS attack will render a victim computer unable to handle legitimate network traffic and legitimate users may be denied the services of the computer. Depending on the type and intensity of the DDOS attack, the victim computer and its network may become completely disabled and require repair.

company. When the attacks on the COS's websites began to affect its provision of service to other customers, 800hosting was overwhelmed and it canceled its agreement with the COS.

On January 19, 2008, members of Anonymous launched another series of DDOS attacks against www.scientology.org. In response, the COS hired an outside company, Prolexic, to help respond to the attacks. Web traffic was routed through filters controlled by Prolexic to mitigate the effects of the DDOS attacks. On January 21, 2008, co-conspirators placed a video on www.youtube.com claiming responsibility for the attacks on behalf of Anonymous, warning the COS that it would be subject to further DDOS attacks and vowing to "systematically dismantle the Church of Scientology in its current form." (Ex. B).

The attacks continued several more days. On January 24, 2008, defendant joined the attack by downloading a DDOS-related program from an Anonymous-related message board on www.4chan.org to the computer located in his dormitory room at Iowa State University. Using that program, defendant launched a DDOS attack on www.scientology.org. He continued the attack through January 28, 2008. In doing so, defendant intended to impair the availability of the COS' websites.

During defendant's participation in the scheme, Prolexic insisted on an additional $20,000 fee because the attacks were more virulent than Prolexic previously contemplated. (Ex. C). The COS has reported losses far greater as a result of all the attacks, including those launched before defendant's entry into the fray.

Following the attacks, defendant was interviewed by agents

3

of the Federal Bureau of Investigation. (Ex. D). During that interview, defendant acknowledged participating in the attack, as well as knowing that his actions were criminal. Defendant stated that although he thought Scientology was "weird," he claimed that his opposition to the COS was based on his belief that advancement in the Church was dependent on payment, which he believed was inconsistent with what religion should be about. Defendant stated that participating in the attack was fun, new and interesting. He nonetheless claimed limited involvement in Anonymous activities.

III. <u>A SENTENCE OF 12 MONTHS IS APPROPRIATE</u>

A.   OFFENSE LEVEL CALCULATION

The PSR has concluded that defendant's total adjusted offense level is 8 and his criminal history category is I, resulting in a 0 to 6 guideline range. (PSR ¶ 57). The government respectfully agrees and is, in any event, bound by the plea agreement to the following calculations:

```
Base Offense Level    :   6    [U.S.S.G. § 2B1.1(a)(2)]

Specific Offense
Characteristics
    Loss              :   +4   [U.S.S.G. § 2B1.1(b)(1)(C)]

Adjustments
    Acceptance of
    Responsibility:       -2   [U.S.S.G. § 3E1.1(a)]
```

Although the government agrees with the PSR that USSG § 2B1.1 is the applicable guideline provision, the application notes to that provision explicitly recognize that it has certain limitations -- limitations that demonstrate that in this particular case, a sentence above the applicable guideline

4

1 | range is appropriate.  Application Note 19 provides:

2 |     Departure Considerations. --

3 |     (A) <u>Upward Departure Considerations</u>.  There may be cases in which the offense level determined under this guideline substantially understates the seriousness of the offense. In such cases, an upward departure may be warranted.  The following is a non-exhaustive list of factors that the court may consider in determining whether an upward departure is warranted.

        (I) a primary objective of the offense was an aggravating, non-monetary objective.  For example, a primary objective of the offense was to inflict emotional harm.

        (ii) The offense caused or risked substantial non-monetary harm.  For example, the offense caused physical harm, psychological harm or severe emotional trauma, or resulted in a substantial invasion of a privacy interest.

USSG § 2B1.1 comment. (n.15).  Here, clear and convincing evidence demonstrates that the otherwise applicable guideline range provided for under USSG § 2B1.1 substantially understates the seriousness of the offense because the object of defendant's crime was to inflict harm on a religious group and he was successful in doing so.

    Although defendant was not part of the initial attacks, there can be no dispute that he joined the attack in response to a call to arms by an on-line group that sought to target the COS. (Ex. A).  The attacks were not isolated, nor were they measured. At their core, the attacks were made against an institution and its members because the co-conspirators, including defendant, did not approve of the COS.  <u>Id</u>.

    Defendant's attack, and those his co-schemers, also had a profound effect on the operations of COS.  The COS was required to incur tens of thousands of dollars in costs to mitigate the

5

damage caused. The COS' on-line activities were disrupted for a significant time. During that time, COS websites, which the COS uses to spread its message about the practices of Scientology and Dienetics, either did not function at all or functioned poorly. Although the stated goal of destroying COS may have been youthful hyperbole, there can be no doubt that the COS was affected by the January 2008 attacks.

In sum, the twelve month custodial sentence adopted by the parties in the plea agreement and advocated here recognizes that while defendant is receiving leniency by avoiding a felony conviction, the seriousness of the offense, in terms of its targeting of a religious group because its perceived practices, demands a sentence above the applicable guideline range.

B.   DEFENDANT'S CRIMINAL HISTORY IS I

The government concurs with the PSR's calculation of defendant's criminal history score.

IV.   <u>A SENTENCE OF TWELVE MONTHS IN CUSTODY IS APPROPRIATE UNDER 18 U.S.C. § 3553</u>

The government submits the following factors under 18 U.S.C. § 3553 apply and also support a sentence of twelve months in prison:

A.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

As outlined above, defendant's crimes were unquestionably serious. Defendant participated in an on-line attack on a religious community because he disagreed with the COS. Although defendant was not part of the initial attacks, upon learning of them, defendant joined the melee and contributed substantially to

6

the damage to the COS' computers. The effect on the COS exceeds the tens of thousands of dollars in costs that the COS incurred in responding the attack.

B.  HISTORY AND CHARACTERISTICS OF DEFENDANT

There is nothing about defendant's history or characteristics that warrant a lesser sentence. Defendant has been given every advantage in life. Defendant is a member of a "close. . . supportive" family and his parents have provided him financial assistance during his education. (PSR ¶¶ 39-40). The PSR reports that he has "special skills" with computers and computer hardware. (PSR ¶ 47). Notwithstanding those advantages, defendant chose to break the law and target individuals because of their beliefs. The normalcy of defendant's history and characteristics are an aggravating factor.

C.  NEED FOR SENTENCE CONTEMPLATED

Section 3553(a)(2) states that the Court, when considering what sentence to impose, shall consider the "need for the sentenced imposed." In this regard, the statute states that these factors shall include the need:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or correctional treatment in the most effective manner.

Anything less than a custodial sentence would not reflect the seriousness of defendant's offense or provide just

7

punishment. Defendant's conduct was outrageous. Moreover, a probationary sentence would hardly provide adequate deterrence for criminal conduct. A probationary sentence might embolden others to use the Internet to engage in hate crimes. Consequently, although defendant may present a limited risk for recitivism, a custodial sentence will promote the goals of Section 3553(a)(2) by reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment for the offense. A custodial sentence might also provide defendant with an opportunity for educational and vocational training. Notwithstanding the foregoing, the plea to a misdemeanor allows defendant the opportunity, following his term of imprisonment, to make a fresh start without the burden of being a convicted felon.

D.  KINDS OF SENTENCES AVAILABLE

Custody is unquestionably an option given the facts of the case and the offense of conviction.

E.  SENTENCING RANGES AND POLICY STATEMENTS

Section 3553(a)(4) states that the Court, when considering what sentence to impose, shall consider the "kinds of sentence and the sentencing range established for -- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ." Section 3553(a)(5) states that the Court, when considering what sentence to impose, shall consider "any pertinent policy statement issued by the Sentencing Commission . . . ." Under the guidelines and the Commission's policy statements, defendants with a similar criminal history convicted of causing a similar amount of damage

to a protected computer would likely be sentenced to probation, particularly if charged with a felony. Under the unusual circumstances of this case, however, where defendant pleaded guilty to a misdemeanor, his activities targeted a religious community, and his activities disrupted the institution's activities for several days, a custodial sentence of one-year is appropriate.

F.   NEED TO AVOID SENTENCING DISPARITIES

Section 3553(a)(6) states that the Court, when considering what sentence to impose, shall consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In the past, defendants with similar records and similar circumstances were sentenced within the range provided by the guidelines. This kind of consistency may begin to change, somewhat, as courts sentence defendants in this post-Booker regime. This type of crime is also somewhat novel. Nevertheless, one would hope, in the absence of exceptional circumstances, that defendants similarly situated to defendant -- those who target religious groups, causing tens of thousands of dollars in damage and disrupting their ability to share their message with others -- will be sentenced to twelve months in custody.

V.  CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence defendant to twelve months in custody, a one year period of supervised release, and $20,000 in restitution.

Dated: April 28, 2010

                Respectfully submitted,

                ANDRÉ BIROTTE JR.
                United States Attorney

                CHRISTINE C. EWELL
                Assistant United States Attorney
                Chief, Criminal Division

                _____
                MARK C. KRAUSE
                Assistant United States Attorney

                Attorneys for Plaintiff
                United States of America